J. E. HOWARD *et al.* V. THE FIRST NATIONAL BANK OF HUTCHINSON.

1. TROVER—*Action*—*Parties.* A mortgagee entitled to the possession of personal property covered by his mortgage may maintain an action against a third party, who has converted the same, without first obtaining a judgment against the mortgagor, and without making him a party to the suit.

2. SUBSEQUENT MORTGAGEE—*Notice of Prior Mortgage.* A subsequent mortgagee with notice of prior mortgage is not a subsequent mortgagee in good faith, under ¶ 3905 of the General Statutes of 1889.

3. PHRASES *Construed.* The words "subsequent purchasers" and "subsequent mortgagees in good faith," in ¶ 3905, mean only purchasers and mortgagees who purchased or took their mortgages after the expiration of the year from the filing of the mortgage.

4. SECOND MORTGAGE—*Satisfaction.* The taking of a second mortgage to secure the same debt, secured by a first mortgage and upon the same property, does not operate as a satisfaction and release in law of the first mortgage.

*Error from Harvey District Court.*

TROVER. The opinion contains a sufficient statement of the case.

*Ady & Nicholson,* for plaintiffs in error.

*Whiteside & Gleason,* for defendant in error.

Opinion by STRANG, C.: Action for damages, for the conversion of certain sheep, begun by the plaintiff below in the

district court of Harvey county, February 18, 1886.   Plaintiff's right to recover was based upon a chattel mortgage covering the sheep, and which had become absolute, and an unsuccessful demand of the defendants below for the possession of said sheep.   The defendants answered: 1st, general denial; 2d, possession of the sheep under other and prior mortgages, and 3d, an agister's lien.   To which plaintiff replied: 1st, general denial; 2d, want of consideration and fraud in the mortgage under which defendants below took possession of the sheep, and 3d, that the notes and mortgages of defendants below were taken with full knowledge on their part of the mortgages of plaintiff below.   The case was tried by the court and a jury on the 10th day of May, 1887, resulting in a verdict for the plaintiff for the sum of $779.38.   A motion for a new trial followed, which was overruled and judgment entered; to which ruling and judgment the defendants excepted, and filed their case-made in this court asking a reversal of the judgment of the district court.

December 1, 1884, H. C. Reeder gave the defendant, plaintiff below, a mortgage on certain sheep to secure the payment of a note for $500.   January 2, 1885, Reeder gave a mortgage to the Bank of Burrton on certain sheep and other property to secure a claim of $1,622.10.   January 19, 1885, said Reeder gave a mortgage to J. E. Howard on 3,000 head of sheep to secure an alleged claim of $3,000.   May 21st, 1885, Reeder gave a mortgage to the plaintiff below, the Bank of Hutchinson, on certain sheep and other property, to secure a loan for $175.   July 10, 1885, Reeder gave a mortgage to the First National Bank of Newton, on sheep for $500, to secure a claim for $500.   The mortgage to the plaintiff below December 1, 1884, was recorded in Harvey county December 3, 1884.   The mortgage to the Bank of Burrton was recorded in Harvey county March 28, 1885.   The mortgage for $175 to the Bank of Hutchinson was recorded in Harvey county May 21, 1885.   The mortgage to the bank of Newton was filed for record July 10, 1885, in Harvey county, Kansas. On the 29th day of June, 1885, Reeder gave the plaintiff be-

low a renewal note and mortgage, renewing the two notes for $500 and $175, with $25 added to the latter note, covering the same sheep included in the mortgage of December 1, 1884, with their increase. This mortgage was recorded in Harvey county June 30, 1885. Reeder lived in Harvey county, and the sheep were kept there.

The first question discussed in the brief of the plaintiffs in error is, that the petition of the plaintiff below does not state a cause of action. They say that the petition fails to show that the indebtedness between the plaintiff below and Reeder, the mortgagor, was ever judicially ascertained, and the petition does not make Reeder a party to the suit. We have discussed this question in the case of *Howard v. Burns*, ante, p. 543, and cited authorities covering the question, and now hold, in this case, that this objection is not good, upon the strength of that case and the authorities there cited.

The second proposition of the plaintiffs in error is, that the renewal affidavit attached to the mortgage of December 1, 1884, is not sufficient, and therefore the said mortgage expired at the end of the year from its date. We don't care to discuss the sufficiency of the affidavit, as we believe with the trial judge, that under the circumstances of this case the renewal affidavit is not a material matter. The affidavit could only be material in case there were subsequent purchasers, or mortgagees in good faith. But there are no subsequent purchasers, and no subsequent mortgagees in good faith. First, because all the mortgagees had full knowledge of the mortgages of the plaintiff below, and of the claims they secured. They each knew that the claims secured by such mortgages were not paid in whole or in part. In *Gregory v. Thomas*, 20 Wend. 17, Mr. Justice Cowen says:

"To say that a man takes in good faith when he acts with notice, and of course under conscious hostility to another who has before taken a similar title, would be a legal solecism. The object of the statute here is that of all the other registry acts, to prevent imposition upon subsequent purchasers and mortgagees, who must many times govern themselves by appearances; when everything is actually explained to them,

they have the best kind of notice, and must be holden to take subject to prior incumbrance."

Second, because the language of the statute (¶ 3905, General Statutes of 1889), "every mortgage so filed shall be void as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith, after the expiration of one year after the filing thereof, unless, within thirty days next preceding the expiration of the term of one year from such filing, and each year thereafter, the mortgagee, his agent or attorney, shall make an affidavit," etc., does not include intermediate purchasers or mortgagees. That is, purchasers or mortgagees who purchased, or whose mortgages were taken intermediate the time of filing of such mortgage and the end of the year during which it remains in force without the renewal affidavit; but it means only purchasers and mortgagees who purchased, or took their mortgages, after the expiration of the year, and after it became necessary to file a renewal affidavit to continue the mortgage in force. This construction is based upon reason. He who purchases after the year has expired during which a mortgage remains in force, has a right in the absence of the renewal affidavit to suppose the mortgage has been paid, even though not released on the record. But he who purchases before the year expires, takes with notice of the mortgage and the rights of the mortgagee under the same. If, therefore, the mortgagee fails at the end of the year and within the time prescribed by the statute to file his renewal affidavit, the purchaser is not affected adversely by the failure to file the affidavit, though the lien of the mortgage as to him remains intact. His rights are unaffected. They remain the same as before. He has invested nothing upon the strength of the failure of the mortgagee to file his renewal affidavit. At the time he purchased he knew of the incumbrance. This knowledge continues, and he may not be said to be a purchaser in good faith. The same reasoning applies to intermediate mortgagees. But we are not left to a decision of this question solely upon reason or principle. The great weight of authority sustains this view.

In the case of *Meech v. Patchin*, 14 N. Y. 71, Denio, C. J.,
says:

"It was enacted by the third section of the laws of 1833,
page 402, that mortgages thus filed should cease to be valid
as against the creditors of the person making the same, or
against subsequent purchasers or mortgagees in good faith,
after the expiration of one year from the filing thereof, unless
they should be re-filed within thirty days before the expira-
tion of the year, with a statement showing the same to be
still on foot. A person about to deal with the possessor and
apparent owner of chattels could, by resorting to the proper
clerk's office, ascertain whether he had mortgaged them to
another party. Should he find a mortgage on file, he could
not determine, without the help of the third section, whether
the lien still continued, whatever length of time had elapsed
since the filing; but by means of the provision in that section
he could be certain that the mortgage had ceased to be a lien
if he found it had not been renewed within one year. If his
examination was made within the year, he must proceed at
his peril, or take other means to ascertain whether the mort-
gage remained a lien. When the plaintiffs in this case took
their mortgage the defendant's mortgage was on file, and they
accordingly had the notice of it which the statute contem-
plated. The year from the time it was filed had not elapsed,
and no default or want of diligence had therefore happened
on the part of the defendant. The defendant's mortgage was
in full vigor, and the plaintiffs' was taken subject to it. The
care which the plaintiffs exercised to file their mortgage and
to preserve its validity by annually re-filing a copy was a
suitable precaution against parties coming after them; but it
had not, as I conceive, any effect against the defendant's prior
mortgage. The priority of the respective mortgages was
fixed as soon as the last one (that of the plaintiffs) had been
executed. If the controversy had arisen within the year from
the filing of the defendant's mortgage, there could not have
been any pretense but that the defendant would have had the
prior title. Their respective rights having become thus fixed,
the diligence or want of diligence of either as to preserving
their liens against subsequent purchasers or mortgagees, by
re-filing their respective mortgages, was of no importance as
against each other. This seems to me the necessary construc-
tion of the statute, as well from its language as upon its gen-
eral policy. Its language is: 'Every mortgage filed,' etc.,

'shall cease to be valid,' etc., 'against subsequent purchasers or mortgagees, unless it shall, within thirty days before the expiration of the year, be again filed.' 'Subsequent,' I think, means after the time when it ought to be again filed to preserve its validity."

In *Dillingham v. Bolt*, 37 N. Y. 198, Justice Parker says

"As against Parmelee, Everts & Co., who purchased before the expiration of the year from the first filing of the mortgage, no re-filing with a statement was necessary.　It was held in *Meech v. Patchin*, 14 N. Y. 71, that the omission to re-file a chattel mortgage, pursuant to the third section of the act on that subject (Laws of 1833, p. 402), does not render it invalid against purchasers or mortgagees, intermediate the original filing and the ending of the year; and that the term 'subsequent,' in the provision in that section, that 'every mortgage filed in pursuance of this act shall cease to be valid as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith, after the expiration of one year from the filing thereof, unless,' etc., means subsequent to the expiration of the year; that is, after the time of re-filing has elapsed."

The New York statute is like our own so far as this question is concerned.　In *Newman v. Tymeson*, 12 Wis. 448, the court says:

"We think this was erroneous.　The section referred to provides that a chattel mortgage, after being properly filed, shall cease to be valid as against the creditors of the mortgagor, or subsequent purchasers or mortgagees in good faith, unless within thirty days next preceding the expiration of the year, the mortgagee shall make and annex to it an affidavit setting forth his interest, etc.　The clear intent of this provision was that, in case of failure to make the affidavit, the mortgage should cease to be valid as against creditors who should thereafter seize it (the property), or purchasers who should hereafter purchase."

"If property, covered by a chattel mortgage properly filed, is so taken and converted within the year after the filing as to give the mortgagee a good cause of action for such taking, it is not necessary in order to preserve his right to recover that the action should be commenced within the year from such filing, or that the mortgage should be renewed at the end

of the year, as required by the statute, to make it valid against purchasers or mortgagees." (*Case v. Conroe*, 13 Wis. 31.)

Judge Orton, delivering the opinion in *Lowe v. Wing*, 56 Wis. 33, says:

"This court has followed the courts of New York in the construction of the above statute for the renewal of chattel mortgages, and has held that 'the clear intent of this provision was that, in the case of failure to make the affidavit, the mortgage should cease to be valid as against creditors who should thereafter seize the property, or purchasers who should thereafter purchase it.'"

The statute of Wisconsin is the same as ours, except that the limit is two years instead of one. In *Edson v. Newell*, 14 Minn. 228, the court says:

"In this case more than one year elapsed between the filing of this mortgage and the commencement of this action, and no copy and statement having been filed as provided for in the statute quoted, the counsel for the defendant insists that the plaintiff cannot recover because the mortgage was not, as against the attaching creditors, in life at the time of the commencement of this action; in other words, because the plaintiff had ceased to have any rights under the mortgage, as against such attaching creditors. But in our opinion this position cannot be sustained. The goods were taken and sold by the defendant before the expiration of one year from the filing of the mortgage. Whether since the conversion he has kept his mortgage on foot by complying with the statute, is unimportant."

Again, referring to *Corbin v. Kincaid*, 33 Kas. 652, Judge VALENTINE says:

"And all this transpired within less than one year after the execution of the plaintiff's mortgage, and at a time when no one would claim or even pretend that any renewal affidavit was necessary. A cause of action in replevin or conversion then arose in favor of the plaintiff and against the defendant, and that cause of action was not satisfied, annulled or barred by any failure on the part of the plaintiff to afterward file a renewal affidavit."

Finally, the Missouri court has construed our statute, and Judge Hough, in *Frank v. Playter*, 75 Mo. 672, says:

"The law of Kansas in regard to personal property provides that every such mortgage 'shall be void as against creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith after the expiration of one year after the filing thereof, unless within thirty days next preceding the expiration of the term of one year from such filing and each year thereafter the mortgagee, his agent or attorney, shall make an affidavit,'" etc.

The object of the statute requiring this affidavit to be made was to keep the public informed from time to time as to the condition of the title of incumbered personal property, and to furnish some reliable record evidence by which parties might be guided in dealing with such property. This statute, by its terms, can only be invoked by subsequent purchasers or mortgagees in good faith; that is, by those who become such after the period at which such affidavit should have been made. And creditors of the mortgagor manifestly cannot claim the benefit of its provisions when their claims are asserted before the expiration of the time prescribed. The plaintiff, however, is neither a subsequent purchaser or mortgagee, nor is he a creditor. It is true he claims through those who were creditors of the mortgagor, but those creditors had asserted their claims, and he had purchased from those claiming under the proceedings instituted by them, while the mortgage was undoubtedly valid, and before any affidavit was required to be filed. The plaintiff having acquired his rights and brought his suit while the mortgage was a valid and subsisting incumbrance against him and those under whom he claimed, his right to recover cannot be aided by the subsequent failure of the defendants to make the affidavit required by law. The rights of the parties had become fixed before the default occurred. Besides, the property had been reduced to possession by the defendants within the year, and that of itself dispensed with the necessity of any affidavit. This view is supported by decisions in New York and Minnesota,

where similar statutes are in force. (*Meech v. Patchin*, 14 N. Y. 71; *Dillingham v. Bolt*, 37 id. 198; *Ely v. Carnley*, 19 id. 496; *Porter v. Parmley*, 52 id. 185; *Edson v. Newell*, 14 Minn. 228.)

It will be remembered that the first mortgage of the plaintiff below was made December 1, 1884; that all the other mortgages were made during the first half of 1885, and the sheep were taken possession of by Howard and the Bank of Burrton in the fall of 1885, and within a year from the execution and filing of the first mortgage of the plaintiff below. The right of action for the conversion of the sheep in favor of the plaintiff below and against the defendant below accrued during the year from the filing of the mortgage of December 1, 1884. It follows then that under the law of *Corbin v. Kincaid*, 33 Kas. 649, the right of action could not be disturbed by a failure to file the renewal affidavit. The plaintiff claims that the mortgage given by Reeder to the Hutchinson bank December 1, 1884, was satisfied by the mortgage given June 29, 1885, the latter mortgage being given to secure the same debt, and complains of instruction number eleven given by the court. We think instruction number eleven is correct, and taken with the thirteenth instruction gives all the law on the subject. We do not think the taking of a second mortgage to secure the same debt secured by a first mortgage upon a renewal of the note secured by the first mortgage and upon the same property, operates as a satisfaction and release in law of the first mortgage.

"The taking of a new note and mortgage on personal property to secure an indebtedness already evidenced by a note and secured by a mortgage on the same property, does not, even when the first note and mortgage are canceled, operate to discharge the lien of such first mortgage." (*Packard v. Kingman*, 11 Iowa, 219.)

"Nothing but payment in fact of the debt, or the release of the mortgage, will discharge a mortgage." (*Crosby v. Chase*, 17 Me. 369; *Hadlock v. Bulfinch*, 31 id. 246.)

In *Gregory v. Thomas*, 20 Wend. 19, the court says:

"But it is said that the defendant's second mortgage ex-

tinguished the first; and consequently, being put to stand exclusively on the last, which was in 1835, the plaintiff's mortgage of the previous September is let in. The argument is against all the books, ancient and modern. Adjudications of several centuries, upon such cases, of every variety of form, in England, in this state and in neighboring states, settle the proposition that a subsequent security for a debt of equal degree with a former, for the same debt, will not by operation of law extinguish it."

The plaintiff seems to think the defendant lost his rights by not proceeding upon his mortgage when the debt it secured became due. We do not think so. There is no limit to the lifetime of the mortgage except such as is put upon it by the statute; otherwise it will remain until the debt is paid or barred. (13 Sm. & M. 21.) We are satisfied no reversible error exists in the record in this case, and therefore recommend that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.