No. 47,637

Blair Milling & Elevator Company, Inc., *Plaintiff-Appellee*, v. Edward J. Wehrkamp and Jean A. Wehrkamp, *Defendants*, and The State Bank of Oskaloosa, a Corporation, *Intervenor-Appellant*.

(535 P. 2d 457)

Opinion filed May 10, 1975.

*Gary L. Nafziger*, of Leech & Nafziger, of Oskaloosa, argued the cause, and was on the brief for the appellant.

*William J. Brady*, of Stillings, Caplinger & Brady, of Atchison, argued the cause, and *William E. Stillings*, of the same firm, was on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: This is an appeal by the State Bank of Oskaloosa (intervenor-appellant) from an order of the district court of Atchison County, Kansas, denying its right to recover proceeds from the sale of collateral in which the Bank had a perfected security interest. The issue is whether a secured party with a perfected security interest in collateral has an interest in the proceeds superior to that of a lien creditor who levied on the proceeds during the ten-day period of temporary perfection provided by K. S. A. 84-9-306 (3).

On May 5, 1970, the Bank entered into a security agreement with the defendants, Edward and Jean Wehrkamp, to secure indebtedness of defendants in the amount of $4,250. The security agreement covered certain farm equipment, hogs, sheep, calves, and rabbits. The same day the Bank took a financing statement from the Wehrkamps on all hogs, equipment, and machinery then owned or thereafter acquired. On May 6, 1970, the Bank filed the financing statement in the office of the register of deeds of Jefferson County, the county of residence of the Wehrkamps. Although

this instrument included a proceeds box which could be checked, this was not done.

Shortly thereafter (the date not appearing), the Wehrkamps moved to Atchison County, and during this period the Bank advanced them additional funds. Two payments were made on their indebtedness, but in December of 1970 the Wehrkamps were unable to make further payments and they agreed with the Bank to sell their livestock and machinery to pay their debt. The sale was duly advertised and was held on December 13, 1970, at their residence in Atchison County.

Prior to the sale, on December 10, 1970, Blair Milling & Elevator Company, Inc. (plaintiff-appellee), procured a default judgment against the Wehrkamps in the district court of Atchison County on a promissory note in the amount of $2,821.28. Execution was issued on the judgment on December 13, 1970, and the sheriff of Atchison County levied on the proceeds of the sale. After deducting the expenses the net amount of the sale proceeds was $1,809.08.

The Bank learned of the attachment of the proceeds the next day and on December 21, 1970, filed a motion to intervene in the case of Blair Milling & Elevator Co., Inc. v. Edward J. Wehrkamp and Jean A. Wehrkamp. Along with its motion, the Bank included a petition and a copy of the original security agreement and financing statement. The Bank's petition alleged all or part of the funds attached by the sheriff and held by the court were subject to a prior and superior perfected security interest in the Bank. In its prayer for relief the Bank requested that the sale proceeds be held by the sheriff until further order of the court, that the court order an accounting to determine the sources of the proceeds of the sale, and that the court order the sale proceeds from the collateral in which the Bank had a security interest paid to the bank.

Blair Milling filed an answer admitting some or all of the personal property listed in the security agreement and financing statement was sold at the Wehrkamps' sale and alleging the sheriff had attached the proceeds to satisfy its earlier judgment. Blair Milling specifically denied the Bank had a perfected security interest in the proceeds or that the Bank's interest was superior to its interest.

The court held the Bank did not have a prior security interest in the proceeds from the sale by virtue of its failure to check the proceeds box of the security agreement or to refile its financing statement in compliance with K. S. A. 84-9-306.

The Bank relies on the provisions of K. S. A. 84-9-306 (2) and

(3) as support for its claim that it held a perfected security interest in the proceeds. Subsection (2) provides that a security interest continues in any identifiable proceeds. Under subsection (3) the security interest in proceeds continues to be perfected for ten days after receipt of the proceeds by the debtor if the original interest was perfected. That subsection provides that the security interest becomes unperfected after the expiration of ten days unless the original financing statement also covers the proceeds, or unless the secured party takes steps within ten days to perfect its interest in the proceeds by filing a financing statement covering the proceeds or by taking possession of them.

In this case the Bank took neither of these steps within the ten-day period of temporary perfection, and Blair Milling contends this resulted in the lapse of the perfected security interest. The Bank argues the filing of the motion to intervene within the ten-day period of temporary perfection constitutes sufficient compliance with 84-9-306 (3) to give it a perfected security interest in the proceeds superior to the interest of Blair Milling.

K. S. A. 84-9-306 contains no provision for determining the priority of a temporarily perfected interest and a judgment creditor who levies execution on the secured property prior to the lapse of the temporary period. 84-9-301 (1) (b) provides that an unperfected security interest is subordinate to the rights of lien creditors who acquire their liens without knowledge of the prior security interest and before the interest is perfected. It logically follows that a perfected security interest would not be subordinate to rights of such lien creditors.

We deem it appropriate to approach the instant problem by analogy to the law developed under our pre-Code chattel mortgage cases. Prior to the adoption of the Uniform Commercial Code, former K. S. A. 58-303 (enacted L. 1959, ch. 239, § 1, and repealed L. 1965, ch. 564, § 416) required a renewal affidavit of mortgage to be filed within thirty days preceding the expiration of five years from the date of the filing of a chattel mortgage. (G. S. 1868, ch. 68, § 11, required a filing after one year; L. 1903, ch. 364, § 1, required a filing after two years.) Our cases construing this statute were consistent in holding that a purchaser or mortgagee who becomes such before the expiration of the first filing does not gain priority by the mortgagee's failure to renew his affidavit in time, and he must take his interest or lien as it stood when he acquired it. (*Fourth National Bank v. Hill*, 181 Kan. 683, 314 P. 2d 312;

*Howard v. National Bank,* 44 Kan. 549, 24 Pac. 983; *State Bank v. Kuhnle,* 50 Kan. 420, 31 Pac. 1057; *Farmers' Bank v. Bank of Glen Elder,* 46 Kan. 376, 26 Pac. 680.) The only effect of a failure to file an affidavit of renewal is to render the chattel mortgage invalid as against purchasers, mortgagees, or creditors who acquire an interest in, or liens on, the property after the time for filing the renewal affidavit. We find support in the following from *Howard v. National Bank,* supra:

"The object of the statute requiring this affidavit to be made was to keep the public informed from time to time as to the condition of the title of incumbered personal property, and to furnish some reliable record evidence by which parties might be guided in dealing with such property. This statute, by its terms, can only be invoked by subsequent purchasers or mortgagees in good faith; that is, by those who become such after the period at which such affidavit should have been made. And creditors of the mortgagor manifestly cannot claim the benefit of its provisions when their claims are asserted before the expiration of the time prescribed. The plaintiff, however, is neither a subsequent purchaser or mortgagee, nor is he a creditor. It is true he claims through those who were creditors of the mortgagor, but those creditors had asserted their claims, and he had purchased from those claiming under the proceedings instituted by them, while the mortgage was undoubtedly valid, and before any affidavit was required to be filed. The plaintiff having acquired his rights and brought his suit while the mortgage was a valid and subsisting incumbrance against him and those under whom he claimed, his right to recover cannot be aided by the subsequent failure of the defendants to make the affidavit required by law. The rights of the parties had become fixed before the default occurred. . . ." (p. 556.)

The time of the levy of execution fixes the rights of creditors, and if the execution is levied before a chattel mortgage lapses, the creditor's lien is junior to the mortgage. Again, we find support in *Howard:*

". . . He who purchases after the year has expired during which a mortgage remains in force, has a right in the absence of the renewal affidavit to suppose the mortgage has been paid, even though not released on the record. But he who purchases before the year expires, takes with notice of the mortgage and the rights of the mortgagee under the same. If, therefore, the mortgagee fails at the end of the year and within the time prescribed by the statute to file his renewal affidavit, the purchaser is not affected adversely by the failure to file the affidavit, though the lien of the mortgage as to him remains intact. (p. 552.)

When Blair Milling levied execution upon the proceeds from the sale of collateral it had notice of the perfected security interest filed by the Bank. By virtue of 84-9-306 (3) the perfected security

interest continues in the proceeds for a period of ten days. Blair Milling is charged with constructive notice of such interest.

We recognize this approach under our pre-Code chattel mortgage law is inconsistent with the official U. C. C. Comment No. 3 to 84-9-403 (2). The code draftsmen take the position that after a lapse the interest of the secured party is subject to defeat by those persons who take priority over an unperfected security interest under 84-9-301 and holders of a perfected conflicting security interest under 84-9-312 (5), even though before lapse the conflicting interest was junior.

The Kansas Comment on 84-9-403 (2) correctly points out, however, that such an interpretation would be contrary to the law of this state as developed in chattel mortgage cases. Consequently, in the absence of a specific statutory provision displacing the prior law of this state, 84-9-403 (2) must be read to be consistent with the pre-Code law as applied to chattel mortgages, and the rights of creditors' conflicting interests in collateral are therefore fixed at the time of the levy.

Viewing the present case in light of this rule, we hold that at the time Blair Milling levied upon the proceeds it had notice of the existing perfected security interest held by the Bank, and pursuant to the provisions of 84-9-306 (3) this perfected security interest continued temporarily in all identifiable proceeds received by the debtor. This being true, the Bank had an interest in the proceeds superior to that of a judgment lien creditor, which would not be affected by the Bank's failure to prevent the perfected security interest from lapsing after the expiration of the ten-day period.

Recognition should be given to the amendment of 84-9-403 (2) (effective January 1, 1976), passed by the 1975 Kansas legislature. That subsection has been amended to provide:

". . . If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse."

This case arose before the effective date of the foregoing amendment. If the amendment is contrary to our holding herein, we cannot in fairness to the parties in this action give it any consideration except to mention its existence, which we have done.

The judgment of the lower court is reversed with directions to determine what portion of the sale proceeds resulted from the

sale of the collateral covered by the Bank's security interest. So determined, judgment should be entered in favor of the Bank in that amount.

FROMME, J., not participating.