**SECURITY SAVINGS BANK OF MARSHALLTOWN, IOWA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 75–220–2.

United States District Court,
S. D. Iowa,
Central Division.

Sept. 19, 1977.

Max H. Buck, of Grimes, Peterson, Buck & Schoell, Marshalltown, Iowa, for plaintiff.

James R. Rosenbaum, U. S. Atty., Des Moines, Iowa, and Gerald A. Kafka, Trial Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., for defendant.

## ORDER

HANSON, District Judge.

This matter is before the Court by way of plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. Though summary judgment is "an extreme remedy," and "one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy," the Court, having considered the parties' briefs and exhibits, finds that defendant is entitled to such judgment. F.R. Civ.P. 56; *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 209 (8th Cir. 1976).

The essential facts are undisputed. On or about December 30, 1974, plaintiff bank did make a loan to one Walls, Inc., to enable it to purchase a 1973 Chevrolet pickup truck, and said plaintiff at that time took a "purchase money security interest" in the truck to secure the $3,715.20 loan. § 554.9107, *Iowa Code* (1975). The security agreement entered into between these parties on or about that date did cover the "proceeds" of that collateral. § 554.9306, *Iowa Code* (1975). Subsequently, on June 19, 1975, debtor Walls, Inc., traded the 1973 Chevrolet pickup truck for a 1974 Ford pickup truck, with title to the Ford truck being received by the debtor on June 30, 1975. On July 7, 1975, officials for the defendant United States, pursuant to 26 U.S.C. §§ 6331 *et seq.*, did seize said Ford truck for delinquent taxes. Thereafter, on July 8, 1975, Walls, Inc., by its president Hollis Stier, executed with plaintiff bank a substitution agreement substituting as collateral the 1974 Ford truck for the 1973 Chevrolet truck. The first security interest of plaintiff was not noted on the Ford truck's certificate of title until July 28, 1975. A day later, on July 29, 1975, the United States

sold the 1974 Ford truck, with that amount being applied to the sum owing for delinquent taxes by Walls, Inc.

The Court has heretofore determined, and the parties have not excepted to such determination, that the ten-day continuity of perfection period in § 554.9306(3) *Iowa Code* (1975) applies and is determinative of this cause of action. In submitting briefs in support of their respective motions for summary judgment, the parties have disagreed on the application of § 554.9306(3) to the set of facts set forth in the above paragraph. Plaintiff, while its argument is somewhat unclear, claims that it had ten days from June 30 to perfect its security interest in the new truck and that the Government's tax lien, which came during that ten-day period, is void. The defendant Government agrees that plaintiff could have perfected its security interest in the new truck at any time during the ten-day period and would thereby have taken first priority among all creditors. However, the Government concludes, plaintiff having failed to attempt a reperfection of its interest until after the ten-day period, the Government's lien took priority over plaintiff bank's lien. The Court, having conducted the following analysis, finds the Government's argument to be correct and determinative of this action.

Section 554.9306(3) of the Iowa Code sets forth in pertinent part:

3. The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten days after receipt of the proceeds by the debtor unless

a. a filed financing statement covers the original collateral and the proceeds are collateral in which a security interest may be perfected by filing in the office or offices where the financing statement has been filed . . . or

b. a filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds; or

c. the security interest in the proceeds is perfected before the expiration of the ten-day period.

Except as provided in this section, a security interest in proceeds can be perfected only by the methods or under the circumstances permitted in this Article for original collateral of the same type.

Clearly subsection (b) of the statute is not applicable, for the issue here is identifiable noncash proceeds—a 1974 Ford truck. Nor, for two reasons, does the Court find subsection (a) to be applicable. First, this section is apparently limited to those types of collateral for which perfection can only be had by following the "filing" procedure outlined in Sections 554.9401 *et seq.* of the Iowa Code.

Presentation for filing of a financing statement and tender of the filing fee or acceptance of the statement by the filing officer *constitutes filing under this Article.* § 554.9403(1). (Emphasis added.)

Perfection with respect to noninventory automobiles, as the parties concur, can only be had by the county treasurer's notation of the security interest upon the certificate of a title, a procedure set forth in Section 321.50 and recognized in Section 554.-9302(4). Subsection (a) is further eliminated as being applicable because the original financing statement between plaintiff and Walls, Inc., was not filed in the county treasurer's office, where the certificate of title would be noted.

The issue, therefore, becomes whether the security interest in the 1974 Ford truck was perfected before the expiration of the ten-day period, as provided in subsection (c). Perfection with respect to a noninventory automobile, as plaintiff apparently concedes, can only occur by following the procedure outlined in Section 321.50, which provides for notification of a security interest upon the certificate of title. Even presuming that the date of receipt of the Ford truck by debtor Walls, Inc., was June 30, 1975, it is clear that plaintiff had not perfected its existing security interest on that proceed by the expiration of the ten-

day period on July 10, 1975. While there may have been an "attachment" of the security interest pursuant to the original security agreement between the plaintiff bank and Walls, Inc., before July 10, the attempted "perfection" by notification of that security interest on the 1974 Ford truck's certificate of title did not occur until July 28, 1975. *See* §§ 554.9203, 554.9303, *Iowa Code* (1975). This attempt to perfect was of no effect since at that time the debtor, Walls, Inc., was no longer in possession of the collateral. Without possession there could be no attachment, and without attachment there can be no perfection. §§ 554.9203(1), 554.9303(1), *Iowa Code* (1975). The July 8, 1975 substitution agreement between plaintiff and debtor, which was signed during the ten-day period when reperfection could have been made without loss of priority, had no bearing on possession or perfection. Nor was the original filed security agreement of 1974 of any significance. Perfection, as indicated in § 554.9306(3) and § 554.9303, could only be had by notification on the certificate of title; and, having failed to make this perfection, other lien creditors were free to take a position of priority over the plaintiff bank in the 1974 Ford truck.

Plaintiff apparently argues that the Government's levy upon the truck during the ten-day period available for its reperfection was unlawful, or at least legally void. However, such is not the case. Indeed, it is true, and the Government does not otherwise argue, that had plaintiff again perfected its interest as to the new truck during the relevant ten-day period, its position as creditor would have had priority over the Government's tax lien. This would have been so even if perfection by notification on the title had occurred on a date during the ten-day period subsequent to the tax lien. § 554.9301(1). But this ten-day grace period as to proceeds only permits the previous creditor time to again perfect his secured interest and assure his priority over other creditors. It does not mean that other creditors cannot file a lien on the debtor's proceed collateral during that period. These other secured parties are unquestionably second in priority to a valid prior perfected interest, but only during the period the prior interest remains perfected. When the prior perfected interest lapses, these latter perfected creditors take priority over subsequent perfected or unperfected interests. Hence, when plaintiff failed to perfect, it became an unsecured creditor on July 11, the eleventh day, and at that time the Government became the creditor with first priority.[1] § 554.9301(1)(b); *cf. State v. Eagle Petroleum Co.,* 261 Iowa 58, 153 N.W.2d 115 (1967).

That the plaintiff did in fact become an unsecured creditor subject to a lien creditor at the lapse of the ten-day period is, as the Government has argued, suggested by analogy to the perfection by filing sections of the commercial code. §§ 554.9401 *et seq., Iowa Code* (1975). Under these sections, a perfected secured party's interest will lapse after five years unless a continuation statement is filed within a certain period. If there is no refiling and "the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse." § 554.9403(2), *Iowa Code* (1975).

Plaintiff, at one point in its argument, suggests that it could not perfect within the ten-day period because the debtor, Walls, Inc., had failed to deliver the certificate of title, as agreed, so that the security interest could be noted. The Court is skeptical of this contention. A corporate officer did come in during the ten-day period to sign a substitution agreement, and there is no indication as to why plaintiff's security interest could not have been noted then as it was

---

1. That improper perfection can undercut the original creditor's position of priority as to motor vehicle collateral can be viewed in *General Motors Acceptance Corp. v. Keil,* 176 N.W.2d 837 (Iowa 1970). The *Keil* case, however, is the reverse of the situation before this Court.

There the original creditor noted its security interest on the certificate of title when it should have filed an appropriate financial statement, since it, unlike plaintiff herein, was securing an automobile being held as inventory for sale by a dealer.

subsequently on July 28. In any case, if plaintiff has an action, it would be against the debtor and not against the Government.

The Court, finding no genuine issue as to any material fact or the applicable law, must enter summary judgment in favor of the defendant. Nor does the Court, in entering such judgment, view this as a particularly harsh result for the plaintiff bank. The plaintiff authorized the disposition of the original collateral, and, in so doing, simply failed to take the necessary steps to insure a continued perfected security interest in the replacement collateral. §§ 554.-9306(2), 321.50, *Iowa Code* (1975).

Accordingly, for the reasons heretofore stated,

IT IS ORDERED that plaintiff's motion for summary judgment is denied.

IT IS FURTHER ORDERED that defendant's cross-motion for summary judgment is sustained.

IT IS FURTHER ORDERED that judgment in the above-entitled case be entered for the defendant.