**HUFF EQUIPMENT COMPANY,
Plaintiff-Respondent,**

v.

**Joe D. JONES, Defendant,**

**Empire Bank of Springfield,
Intervenor-Appellant.**

**No. 14070.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 13, 1987.

James L. Bowles, Springfield, for intervenor-appellant.

Mark E. Fitzsimmons, Fitzsimmons & Schroeder, James A. Miller, Springfield, for plaintiff-respondent.

MAUS, Judge.

On June 30, 1986, this district filed an opinion affirming the judgment. Thereafter, on July 18, 1986, this district denied appellant's motion for rehearing or to transfer to the Supreme Court. Appellant then filed an application for transfer with the Supreme Court. It sustained the application on September 16, 1986. On January 21, 1987, the Supreme Court entered the following order: "Case retransferred to Missouri Court of Appeals, Southern District." With the addition of this paragraph, our original opinion is readopted. It is set out hereafter.

The subject matter of this action is the proceeds of the sale of a tractor-loader. Empire Bank of Springfield (Empire Bank) claimed those proceeds as the secured party under a security agreement. Huff Equipment Company (Huff), as a creditor of the debtors-owners of the tractor-loader, claimed by a garnishment of the auctioneer who held those proceeds following the sale. The trial court awarded the proceeds to Huff. Empire Bank appeals.

The following is a concise outline of the facts. On April 7, 1981, Joe Jones and Helen Jones, his wife, (debtors) executed a security agreement granting Empire Bank a security interest in described equipment which included the tractor-loader. Neither the security agreement nor the applicable financing statement covered proceeds or products.

Debtors scheduled an auction to sell various items of property on June 4, 1983. The property to be sold included the tractor-loader. Empire Bank consented to the sale upon the understanding the proceeds of the tractor-loader would be paid to the bank.

On June 2, 1983, Huff instituted this action against the debtors. The petition is not before the court. However, from the record it may be gleaned that the petition sought recovery on an unsecured note in the amount of $10,432.83. Upon Huff's affidavit that debtors were about to fraudulently convey or assign their property or effects so as to hinder or delay their creditors, a writ for the attachment of the property of debtors was issued. On June 2, 1983, a summons was served upon debtors. A copy of the writ of attachment was also left with debtors. However, the tractor-loader was not seized.

On June 3, 1983, the sheriff served a writ of garnishment in aid of attachment upon the auctioneer who was to conduct the sale in question. The net proceeds of that sale were $9,822.28. Of that amount, $5,100 was received for the tractor-loader. The auctioneer paid the proceeds into court. Empire Bank intervened. It filed a counterclaim against Huff by which it sought judgment for $5,100, punitive damages and attorneys fees. The trial court denied Empire Bank relief. The attached funds were awarded to Huff.

Empire Bank contends the trial court erred in awarding the proceeds to plaintiff-respondent, a creditor of defendant who attached the proceeds, rather than to intervenor-appellant, the holder of a perfected security interest in the farm equipment, for the right of intervenor-appellant to the proceeds was superior to that of plaintiff-respondent in that (A) the security interest of intervenor-appellant was perfected long before the sale, (B) the security interest of intervenor-appellant, under section 400.9–306(2), continued notwithstanding the sale, and (C) the security interest of intervenor-appellant was not lost by the agreement between defendant and intervenor-appellant that the farm equipment could be sold at auction.

To support this point, Empire Bank first argues that Huff attached the tractor-loader which was subject to its perfected security interest. Therefore, the bank concludes, that attachment was subject to the security interest which followed to the pro-

ceeds. Empire Bank also contends "there never were any proceeds from the sale of the tractor and loader which were received by the Debtor and in which Intervenor Empire Bank did not have a perfected security interest." That contention is premised upon the following proposition: "Empire Bank would have had to consent to the sale of the property in writing before the sale could take place free of the security interest of Empire Bank."

■ The first argument is factually unsound. Service of a copy of the writ upon debtors was not an attachment of the tractor-loader. See Rule 76.06. The second argument is based upon language from *Central California Equipment Co. v. Dolk Tractor Co.*, 78 Cal.App.3d 855, 144 Cal.Rptr. 367 (1978). That case involved a security agreement which expressly prohibited a sale without written consent. The argument and case are not applicable. The security agreement in question provides the debtor will not sell the collateral. But, it does not contain any requirement of written consent. Cf. *First Nat. Bank and Trust Co. of Oklahoma City v. Iowa Beef Processors*, 626 F.2d 764 (10th Cir.1980); *Lisbon Bank and Trust Company v. Murray*, 206 N.W.2d 96 (Iowa 1973); *Garden City Production Credit Assn. v. Lannan*, 186 Neb. 668, 186 N.W.2d 99 (1971). Further, Empire Bank did consent to the sale. Empire Bank's understanding that the debtor would remit the proceeds of the tractor-loader to the bank did not vitiate that consent. *Lisbon Bank and Trust Company v. Murray*, supra; *Charterbank Butler v. Central Cooperatives, Inc.*, 667 S.W.2d 463 (Mo.App.1984). Cf. *Moffett Bros. & Andrews Commission Co. v. Kent*, 5 S.W.2d 395 (Mo.1928).

Moreover, both of these arguments are misdirected. This is not an action to recover the tractor-loader. Cf. *First Nat. Bank and Trust Co. of Oklahoma City v. Iowa Beef Processors*, supra. Nor is it an action based upon conversion of the tractor-loader. *N. Cent. Kan. Prod. Cred. Ass'n v.*

*Wash. Sales Co.*, 223 Kan. 689, 577 P.2d 35 (1978). The funds in question were received when the collateral tractor-loader was sold and constitute proceeds. § 400.9-306. Huff acquired a lien by "attachment, levy or the like" and was a lien creditor. § 400.9-301(3). This action is to determine the priority of a secured creditor and a lien creditor to those proceeds. Two provisions of the Uniform Commercial Code are basic to that determination.[1]

Section 400.9-301 in part provides: "(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of ... (b) a person who becomes a lien creditor without knowledge of the security interest and before it is perfected...."

Section 400.9-306 in part provides:

(2) [A] security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds, including collections received by the debtor.

(3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten days after receipt of the proceeds by the debtor unless

(a) a filed financing statement covering the original collateral also covers proceeds; or

(b) the security interest in the proceeds is perfected before the expiration of the ten-day period.

■ During the ten days following the auction, Empire Bank could have perfected its security interest in the proceeds of the tractor-loader by filing an appropriate financing statement signed by the bank. § 400.9-402. On its failure to do so, its security interest in the proceeds became unperfected. It seems clear the interest of

1. Sections 9-301 and 9-306 and other interrelated sections have been amended in Revised Article 9 of the Uniform Commercial Code. Those amendments have not been adopted in Missouri.

the bank in those proceeds was subject to the garnishment of lien creditor Huff.

However, Empire Bank cites and relies upon *Blair Milling & Elevator Co., Inc. v. Wehrkamp*, 217 Kan. 122, 535 P.2d 457 (1975), which holds to the contrary. In that case, under similar circumstances, a judgment creditor levied upon the proceeds of collateral subject to a security agreement. The levy was made during the ten-day period of temporary perfection. The court reviewed the pre-Code cases of Kansas holding that "a purchaser or mortgagee who becomes such before the expiration of the first filing does not gain priority by the mortgagee's failure to renew his affidavit in time, and he must take his interest or lien as it stood when he acquired it." Id. 535 P.2d at 460.

The Kansas court then noted that during the ten-day period, the lien creditor was charged with notice of the temporarily perfected security interest. It then observed, "in the absence of a specific statutory provision displacing the prior law of this state, 84–9–403(2) must be read to be consistent with the pre-Code law as applied to chattel mortgages, and the rights of creditors' conflicting interests in collateral are therefore fixed at the time of the levy." Id. 535 P.2d at 461.

The Kansas court concluded:

> Viewing the present case in light of this rule, we hold that at the time Blair Milling levied upon the proceeds it had notice of the existing perfected security interest held by the Bank, and pursuant to the provisions of 84–9–306(3) this perfected security interest continued temporarily in all identifiable proceeds received by the debtor. This being true, the Bank had an interest in the proceeds superior to that of a judgment lien creditor, which would not be affected by the Bank's failure to prevent the perfected security interest from lapsing after the expiration of the ten-day period.

Id. 535 P.2d at 461. The court acknowledged that such a result was inconsistent with the Comments to the Uniform Commercial Code. It also observed that legislation had been passed to specifically bar such a result in the future.

This court does not find *Blair* persuasive in the resolution of this case. Rule 9–.06 provides: "The service of notice of garnishment and summons attaches the property subject to garnishment in the garnishee's possession or charge or under his control between the time the notice is served and the time of the return date of the writ of garnishment." Between the time of service of the garnishment and summons and the time of the return date of the writ of garnishment, after the ten-day period the funds in question in the garnishee's possession were not subject to a perfected security interest. To follow *Blair* would be to continue a temporary perfection of a security interest in the absence of compliance with and contrary to the applicable statute.

As noted, that result is contrary to the Comments to § 9–306 of the Uniform Commercial Code. The Missouri Code Comment to § 400.9–306(3) includes the following: "This section is new. It limits the security interest in proceeds to a period of ten days unless the financing statement also covers proceeds, or unless the security interest in the proceeds is perfected within that period." That language limiting the existence of the security interest in proceeds to a period of ten days evidences a clear intent that the priority of such a temporarily perfected security interest should not continue beyond the ten-day period. Those Comments are a permissible and persuasive aid in determining legislative intent. *Groppel Co., Inc. v. U.S. Gypsum Co.*, 616 S.W.2d 49 (Mo.App.1981). This court adopts the reasoning in *Security Sav. Bank of Marshalltown, Iowa v. U.S.*, 440 F.Supp. 444 (S.D.Iowa 1977). "When the prior perfected interest lapses, these latter perfected creditors take priority over subsequent perfected or unperfected interests. Hence, when plaintiff failed to perfect, it became an unsecured creditor on July 11, the 11th day, and at that time the Government became the creditor with first priority." Id. at 447. This position was adopted in *Security Nat. Bank and Trust Co. of Norman v. Dentsply Professional Plan*, 617 P.2d 1340 (Okl.1980).

A situation similar to that in the case at bar occurs when a perfected security interest has lapsed due to creditor's failure to comply with the Code's continued-perfection requirements. When a lapse occurs the security interest—by uniform holdings—becomes unperfected as against all other interests. This results in the holder of a perfected security interest being advanced in priority, even though before the lapse that interest was junior. In these cases—it is reasoned—the prior secured party could have protected its rank of priority by complying with Code requirements for continued perfection.

Id. at 1343 (footnotes omitted). Cf. *Allied Van Lines, Inc. v. Small Bus. Administration,* 667 F.2d 751 (8th Cir.1982); *State Sav. Bank of Hornick v. Onawa State Bank of Onawa,* 368 N.W.2d 161 (Iowa 1985); *Genoa Nat. Bank v. Sorensen,* 208 Neb. 423, 304 N.W.2d 659 (1981); *Kulik v. Albers, Inc.,* 91 Nev. 134, 532 P.2d 603 (1975); *Hobart Corp. v. North Central Credit Serv., Inc.,* 29 Wash.App. 302, 628 P.2d 842 (1981).

Empire Bank has attached no significance to that portion of § 400.9–301(1)(b) that grants priority to "a person who becomes a lien creditor *without knowledge* of the security interest and before it is perfected." (emphasis added). Nor was this phrase considered in *Blair.* It is sufficient to observe that knowledge means more than notice. "A person 'knows' or has 'knowledge' of a fact when he has *actual* knowledge of it." § 400.1–201(25) (emphasis added). Cf. *First Nat. Bank of St. Charles v. Chemical Products, Inc.,* 637 S.W.2d 373 (Mo.App.1982). Also see *United States v. Ed Lusk Construction Company, Inc.,* 504 F.2d 328 (10th Cir.1974); *Clark Oil & Refining Co. v. Liddicoat,* 65 Wisc.2d 612, 223 N.W.2d 530 (1974). As no issue has been presented concerning the actual knowledge of Huff, that phrase need not be further considered. Those interested in its application may see *In re Mistura, Inc.,* 705 F.2d 1496 (9th Cir.1983); *Broadway Nat. Bank v. G & L Athletic Supplies, Inc.,* 10 Kan.App.2d 43, 691 P.2d 400 (1984); *United States v. Waterford No. 2*

*Office Ctr.,* 246 Ga. 475, 271 S.E.2d 790 (1980); *United States v. PS Hotel Corp.,* 404 F.Supp. 1188 (E.D.Mo.1975).

As a basis for its judgment, the trial court also found Empire Bank's counterclaim stated a claim for conversion which was not established by the evidence. The finding of the trial court that Empire Bank's claim to the proceeds was subordinate to that of Huff was supported by the evidence and did not erroneously apply the law. The judgment is sustained by that finding. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). It is not necessary to consider the additional finding.

The remaining point is that the trial court erred in assessing all of the costs against Empire Bank. Empire Bank filed a motion in the trial court seeking a reassessment of the costs. However, it withdrew that motion before it was passed on by the trial court. Under this point Empire Bank cites § 514.060. That section in general provides the prevailing party shall recover his costs. That section is not used to support argument under that point.

"Ordinarily, a point of error unsupported by a citation of relevant authority is deemed abandoned." *Wright v. Martin,* 674 S.W.2d 238, 242 (Mo.App.1984). The point is not so novel that relevant authority would not be available. The point must be considered abandoned. The judgment is affirmed.

PREWITT, C.J., concurs and files concurring opinion.

HOGAN, P.J., and CROW, J., concur.

PREWITT, Chief Judge, concurring.

I agree with the majority opinion. However, if the record had established an agreement between the debtors, the auctioneer, and Empire Bank, that the proceeds were to be paid by the auctioneer directly to Empire Bank, then my view would have been different. There may have been such an agreement, but it is not shown in the record.

Huff Equipment Company's right to receive the funds by garnishment can be no

greater than the debtors' right to the funds. If the auctioneer was legally obligated to pay the proceeds to Empire Bank rather than to the debtors, then the garnishment would have been ineffective as to those funds. In such a situation, the provisions of the Uniform Commercial Code followed in the majority opinion would not be relevant. Those provisions would be applicable only if the proceeds were held by the debtors or by a third party who could properly pay them to the debtors. From the record it appears that the auctioneer was going to pay the proceeds to the debtors so the Code provisions are controlling.