427 A.2d 1163

**John V. KIBBE and Virginia Kibbe, his wife,**

v.

**Herb ROHDE, David Heath and Patz Company, Appellants,**

v.

**Thomas KELLEY and Kathleen Kelley, his wife.**

Superior Court of Pennsylvania.

Argued April 16, 1980.

Filed Jan. 30, 1981.

Reargument Denied April 20, 1981.

Petition for Allowance of Appeal Denied June 25, 1981.

David E. Holland, Erie, for appellants.

John R. Wingerter, Erie, for appellees.

Before CAVANAUGH, HOFFMAN and VAN der VOORT, JJ.

VAN der VOORT, Judge:

This is an action in trespass which involves the conflicting rights of the holder of an unperfected lien on a piece of farm equipment and a subsequent purchaser for value. The lien holder has trespassed on the farm of the purchaser without his knowledge or consent for the purpose of recovering possession of the equipment. The purchaser has sued in trespass to recover the value of the equipment which was taken from his farm and for exemplary damages. A jury has awarded the purchaser $3,200 for conversion of the equipment and $2,500 as exemplary damages. The lien holder has appealed from the order of the Court below, requesting either a judgment N.O.V. or a new trial. The controlling issue is whether or to what extent the purchaser had knowledge of the lien at the time he made his purchase.

The chattel in dispute was a material handling device known both as a gutter cleaner and a barn cleaner (hereinafter, a barn cleaner) and used to take manure out of a barn. It is a relatively large and heavy piece of equipment attached to a barn floor by concrete. It takes about 50 man-hours to install and so attach it. Thus in place, it would appear to be a fixture permanently affixed to the floor of the barn.

The barn cleaner here in controversy was purchased on September 7, 1976 by Ronald J. Bull from the Patz Company, one of the appellants herein, under a lease-purchase agreement dated September 7, 1976 which Mrs. Bull, now Mrs. Kathleen Kelley, also signed as a co-lessee. The contract called for a downpayment of $860.49 and two subsequent payments in the same amount on September 7, 1977 and 1978. Paragraph 10 of the contract provided that if Bull should default in either of the subsequent payments,

the Patz Company might "enter upon lessee's premises and, without Court order or other process of law, repossess and remove the equipment either with or without notice to lessee".

At the time the barn cleaner was purchased, Mr. and Mrs. Bull lived on a 250 acre farm in Erie County which they leased from Thomas Kelley, one of the appellees. A farmhouse and a dairy barn and two or three other small buildings were located on the property. Pursuant to the agreement, the Patz Company installed the barn cleaner in the dairy barn on the Bull farm.

The Patz Company neglected to file the financing statement necessary to perfect its security interest in a fixture attached to land with the Recorder of Deeds of Erie County or with the Prothonotary where security interests in farm equipment are perfected, 13 Pa.C.S.A. § 9401. It also failed to return a copy of the contract to the Bulls. While the contract was signed in duplicate, both copies were sent to the home office of the Patz Company for approval, and remained there.

A few months after the barn cleaner was installed, Mr. Bull abandoned the farm and his wife and left the community. Mr. Kelley resumed possession and occupancy of the farm, including the dairy barn and the barn cleaner and in due course, married Mrs. Bull, now Kathleen Kelley, an appellee herein.

On October 1, 1977, John V. Kibbe and his wife, appellees herein, contracted to purchase from Thomas and Kathleen Kelley, and Cecil McClelland and his wife, the Kelley farm, including the buildings and certain fixtures and equipment, a bulk tank and grainery, a silo motor, a corn crib and the barn cleaner. The purchase price was $100,000 for the entire property. Negotiations for the sale began early in August and concluded with the delivery of the deed on October 28, 1977.

Three of the four sellers testified that during the negotiations which preceded the purchase, they told Mr. Kibbe that

a balance was owing on the barn cleaner.  Mr. McClelland recalled telling Mr. Kibbe that the balance owing was somewhere between $1,600 and $1,800 but neither Mr. nor Mrs. Kelley recalled the mention of any figure.  Mr. Kibbe denied being told any more than that there might be a balance owing on the barn cleaner.

No invoices for any balance due were ever given to Mr. Kibbe either by the Kelleys or the Patz Company.  The sellers made no mention of a reserved security interest or of a right of repossession and presumably had no knowledge of such a security interest.  None of the sellers had a copy of the agreement between the Patz Company and the Bulls, even though Mrs. Kelley, then Mrs. Bull, had co-signed it but retained no copy.

At the time the parties got together to draw up the contract of sale, Mr. Kelley told Eugene P. Kuhn, Esquire, the attorney who represented both buyers and sellers, that there was a balance due on the barn cleaner.  No mention was made at any time of a retained security interest.

The parties concluded their negotiations for the sale of the farm, including the barn cleaner, by providing in the sales agreement of October 1 that the sellers would assume responsibility for obtaining a cancellation of Ronald Bull's earlier lease of the farm and would in all other respects convey a good and marketable title, except that title to the barn cleaner was to be "subject to any indebtedness collectible against the same".  The attorney for the parties was given the responsibility of making a title search of the property, both land and chattels, to determine before title was transferred whether there were any liens or other claims to be cleared up.  Mr. Kibbe testified that it was his understanding of the agreement that if a lien were discovered, he would have to pay it, otherwise he was not to be responsible.

The sale of the farm and equipment was closed on October 28.  In the interval between the agreement and the sale, Mr. Kuhn had completed a title search and had determined that no liens were outstanding against the property.  Mr. Kibbe

concluded that the non-existence of a lien on the barn cleaner ended his responsibility so far as any indebtedness on the barn cleaner was concerned.

On November 17, 1977, Herbert Rohde and David Heath, appellants, employed by and representing the Patz Company, also an appellant, appeared at the dairy barn on Kibbe's recently purchased property with two trucks, a hoist and a crew of several men, prepared to remove the barn cleaner on instructions from the home office of the Patz Company. No previous notice of their intention to reclaim the barn cleaner had been given to Mr. Kibbe or the Kelleys, although the appellants knew that title had been transferred recently to Mr. Kibbe and his wife. However, Rohde and Heath were surprised to find Mr. Kibbe at work in the barn and changed their plans in order to avoid a confrontation. Mr. Rohde inquired of Mr. Kibbe whether he was the new owner of the property, a fact Rohde already knew and which Kibbe confirmed. Rohde inquired whether Kibbe knew that some money was still owed on the barn cleaner to which Kibbe responded that his lawyer had searched the records and found that there was no lien against the barn cleaner. Rohde explained that he had the trucks and a crew with him because he had another service job in the neighborhood, and then left.

On December 1, at 8:00 o'clock in the morning, Messrs. Rohde and Heath returned to the dairy barn with two trucks, a hoist and a crew of four men. Mr. Rohde went to the farmhouse adjacent to the dairy barn, where Mr. and Mrs. Kelley were still in residence, and asked Mrs. Kelley's permission to remove the barn cleaner. She replied that the farm and all its equipment were now owned by the Kibbes and that they could be found at a house a few miles down the road. Mr. Rohde thereupon ordered his crew to remove the barn cleaner, which was accomplished after a few hours of work.

While this removal was in progress, Rohde and Heath drove down the highway to the Kibbe residence and told Mr. Kibbe that they had removed the barn cleaner because of a

default in payment of the balance due on the purchase price. Mr. Rohde had a copy of the purchase agreement with him and read to Mr. Kibbe that portion sanctioning entry and removal for non-payment of the balance.

Mr. Kibbe testified that this was the first time that he had ever heard of such an agreement. Indeed, neither Mr. or Mrs. Kelley had ever seen a copy of the agreement since it was signed in duplicate and sent to the home office of Patz, although Mrs. Kelley had been a co-signer of the agreement as the then-wife of Ronald J. Bull. There was no testimony that anyone other than the Patz Company and its representatives knew that a lien agreement was in existence until the initial confrontation of November 17 when Rhode testified that he mentioned to Mr. Kibbe that the Patz Company had retained a lien on the barn cleaner. However, its terms were not disclosed to Kibbe until the December meeting in his home.

Mr. Kibbe testified that he tried to find out the amount of the debt at the December 1 confrontation so that he might pay it off but was told that the Patz Company was not interested in selling to him. However, Mr. Rohde testified that he told Mr. Kibbe on both November 17 and December 1 that he could pay off the debt if he wished but that Kibbe replied that he had paid for the property and was not interested in paying for it again. The conversation of December 1 between Rohde, Heath and Kibbe lasted about 45 minutes.

Between November 17 and December 1, none of the appellants communicated with the Kibbes in any way. On January 19, 1978, some seven weeks later, the Kibbes filed their Complaint in Trespass against Patz Company and its agents, Rohde and Heath. The defendants joined Thomas and Kathleen Kelley as co-defendants, contending that if the Kibbes were found to be purchasers for value without knowledge of the lien, the Kelleys were guilty of deception in not notifying the Kibbes of this fact and should be required to reimburse the original defendants whatever amount they were required to pay the plaintiffs.

The case was tried before a jury on January 11–12, 1979. At the conclusion of the testimony, the court dismissed the complaint against the co-defendant, Thomas Kelley, but submitted to the jury the factual issue of whether the Kibbes had knowledge of the appellant's security interest in the barn cleaner when they purchased the Kelley farm and equipment. The jury returned a verdict in favor of the Kibbes and against the appellants, Patz Company, Rohde and Heath for $3,200, representing the value of the barn cleaner, and $2,500 as punitive damages. No award was returned against Mrs. Kelley.

The lower Court, sitting en banc, has refused the motion of Patz Company and its representatives, Rohde and Heath, for a judgment N.O.V. or a new trial and they have appealed from the order to that effect. They concede that the conflicting testimony as to what knowledge, if any, Mr. Kibbe had about the security interest of the Patz Company was appropriately left to the jury to determine. However, they contend they were entitled to binding instructions that Mr. Kibbe knew of the outstanding security interest of the Patz Company in the barn cleaner when he bought the farm and its equipment on October 28, 1977 because the October 1st sales agreement which he signed provided that he was to purchase the barn cleaner "subject to any indebtedness collectible against the same".

■ We start with the fact that the Patz Company did not file a financing statement concerning Mr. Bull's contract for the purchase of the barn cleaner as required by law if his security interest was to be perfected. *Uniform Commercial Code*, 13 Pa.C.S. § 9401. Absent such a filing, the Patz security interest could only be binding on Kibbe, a subsequent purchaser for value, if at the time of purchase he had "knowledge of the security interest". 13 Pa.C.S. §§ 9301, 9313(d)(1). "Knowledge" is defined in the Uniform Commercial Code: "A person 'knows' or has 'knowledge' of an act when he has actual knowledge of it". 13 Pa.C.S. § 1201. To the same effect, *Bloom v. Hilty*, 427 Pa. 463, 468, 234 A.2d 860, 862 (1967). Mr. Kibbe must have had actual

knowledge of the unperfected Patz security interest at the time he purchased the farm to be subordinated to it.

Kibbe's contract of October 1st for the purchase of the farm and equipment brought no such knowledge home to him. When Messrs. Kelley and Kibbe got together with their attorney, Eugene P. Kuhn, to draw the October 1st sales agreement, there was testimony that Kelley told Kuhn and Kibbe that Bull had left money still owing on the barn cleaner. He did not say whether the debt was secured or otherwise. Consequently, when the attorney drew the contract which Kibbe signed, he provided that Kibbe was purchasing the barn cleaner "subject to any indebtedness collectible against the same". Kuhn testified that he used this language in the contract because he recognized that there was a possibility that Bull's debt might be collectible against the barn cleaner. When the contract was signed, no search of the records had been made and none of the parties knew whether the Patz Company had a lien against the barn cleaner. However, Kuhn made such a search before the sale was consummated on October 28 and determined that no lien had been filed. That was the only knowledge available to Kibbe at the time he became purchaser for value. He testified that he understood the contract to mean that if there was any lien on the barn cleaner, making Bull's indebtedness collectible against it, he would assume responsibility for the debt. There was no record of such a lien and Kibbe testified that at the time of closing, he assumed that there was none. Certainly there was nothing in the contract language to compel, or even to authorize a jury to find Kibbe had actual knowledge that the Patz Company had a security claim which carried with it a right of repossession.

The further contention that the appellants should have been granted binding instructions or should now have a judgment N.O.V. on the basis of the attorney's knowledge of the Patz claim at the time of purchase is equally mistaken. Kuhn testified that Mr. Kelley told him and Mr. Kibbe at the time the October 1st contract was drawn that there was a balance owing on the barn cleaner and that he recognized

that there was a possibility that this might be collectible against the barn cleaner, hence the contract language. Mr. Kuhn's subsequent title search revealed no such claim and the parties closed the purchase on October 28 in the belief that no lien existed. Consequently, even if we made the appellant's assumption that the attorney's knowledge is attributable to Kibbe, there would be no basis for a conclusion that either had actual knowledge of the Patz claim to a lien.

■ The appellants advanced the further contention that they are entitled to a judgment N.O.V. because the evidence was not sufficient to sustain the jury's award of punitive damages. The Patz Company was undoubtedly attempting to carry out a reclamation of the barn cleaner under the terms of its contract in the mistaken belief that it had a security interest enforceable against Kibbe. While the Patz Company and its agents may have acted in good faith, that does not excuse the intentional trespass on the property of a third party. *Kopka v. Bell Telephone Company of Pennsylvania*, 371 Pa. 444, 450, 91 A.2d 232 (1952). The appellants knew that Kibbe had purchased the farm on which the barn cleaner was located. They invaded the Kibbe farm and the barn where the cleaner was housed, without prior notice to him either of the debt or of their intention to reclaim the barn cleaner. They committed the trespass at an hour calculated to effect removal of the barn cleaner without Kibbe's knowledge. The nature of their trespass was certainly wanton and done in reckless disregard for the property rights of the Kibbes and constituted high-handed and illegal conduct. The circumstances of the trespass sustain the jury's award of $2,500 in punitive damages.

■ Finally, it is contended that a new trial should be granted because of an inconsistency in the jury's verdict. The inconsistency is said to lie in the jury's apparent determination that Kibbe did not have knowledge of the Patz lien, while at the same time exonerating Mrs. Kelley from any liability. It is the appellants' contention that it was Mrs. Kelley's legal duty to advise Kibbe of the Patz lien at the time the Kibbe's purchased the farm. The short answer

to the argument is that Mrs. Kelley did not know about the lien because the Patz Company had not returned to her a copy of the lien contract which she signed. She knew that a balance was still owing on the contract and that this was fully reported to the Kibbes. This was not sufficient to bring home to Mr. Kibbe knowledge of a lien, and a subsequent search of the records disclosed none. Hence, Kibbe did not have the actual knowledge of a lien, although Mrs. Kelley had fully disclosed all she knew about the Patz transaction. Under the circumstances, the jury was quite justified in exonerating Mrs. Kelley from any liability to the appellants.

Appellant makes several objections to the refusal of the Court to make certain specific charges to the jury. We find, however, that the subject matter of each was adequately covered in the Court's charge and that its refusal to supplement its charge or to submit interrogatories to the jury were matters well within its discretion.

Affirmed.