(691 P.2d 400)
No. 56,586

BROADWAY NATIONAL BANK, *Appellant,* v. G & L ATHLETIC SUPPLIES, INC.; MARILYN FARMER GIANGRECO, an Individual, and MARILYN FARMER GIANGRECO, d/b/a G & L ATHLETIC SUPPLIES, INC., *Appellees.*

Opinion filed December 6, 1984.

*Howard L. Lyden,* of Roth & Lyden, of Overland Park, and *Duke W. Ponick, Jr.,* of Kansas City, Missouri, for appellant.

*J. Eugene Balloun* and *Ron Bodinson,* of Shook, Hardy & Bacon, of Overland Park, for appellees.

Before ABBOTT, P.J., C. FRED LORENTZ, District Judge, Assigned, and HARRY G. MILLER, District Judge Retired, Assigned.

ABBOTT, J.: This is an action brought by the plaintiff, Broadway National Bank, to recover certain machinery, equipment and inventory in which it claims a security interest. The trial court held the defendants to be buyers not in the ordinary course of business with priority over Broadway National Bank's unperfected security interest.

Broadway National Bank (Bank) extended a line of credit to G & L Bowling Supplies, Inc., (G & L) and secured it by taking a security interest in G & L's equipment and inventory. G & L is a Missouri corporation engaged in the wholesale and retail sale of bowling equipment and bowling shirts. Sam J. Giangreco (Sam) was president of G & L at all times material to this appeal. Defendant Marilyn Farmer Giangreco (Marilyn) was employed as secretary and office manager at G & L from 1972 to 1977.

Marilyn and Sam had lived together as husband and wife from June 1972 through September 1982.

In 1979, G & L experienced financial difficulties, and Sam enticed Marilyn to return to work for G & L by promising her half the business (the silk screen and custom bowling shirt portion). Marilyn worked at G & L until October 1981.

In July 1981, Marilyn, her sister and her brother-in-law formed a Kansas corporation, G & L Athletic Supplies, Inc., (Athletic Supplies). Marilyn, her sister and her brother-in-law were the officers and shareholders of Athletic Supplies.

In September 1981, the Bank's collateral was moved from G & L in Missouri to Ottawa, Kansas. On October 1, 1981, a bill of sale was signed by Sam in favor of Marilyn, evidencing the silk screen and custom bowling shirt half of the business, which was at that time in Kansas. Marilyn transferred the equipment and supplies to Athletic Supplies, Inc., in return for stock.

Since October of 1981, Athletic Supplies has operated its business out of Ottawa, Kansas. Sam has continued to operate G & L out of Missouri.

The Bank discovered in October (or possibly September) of 1982 that its collateral had been transferred to Ottawa. The Bank has never perfected its security interest in Kansas. Marilyn claims she was unaware of the Bank's security interest in the equipment and inventory until the Bank officials contacted her in Ottawa in October of 1982 to investigate the situation and claim its collateral. The Bank subsequently filed this action to set aside the transfer and foreclose its security interest.

K.S.A. 84-9-103(1)(d) provides a four-month grace period for a secured party to perfect its security interest in collateral that has been brought into this state from another. If the secured party fails to perfect in the new jurisdiction, the security interest is deemed unperfected as against one who becomes a purchaser after removal of the collateral from its original jurisdiction. The Bank contends that defendants are not protected by this provision because they purchased the collateral in Missouri, before its removal to Kansas.

The record reveals that in the trial court the Bank contested the priority question solely on the ground that defendants had knowledge of the security interest and thereby failed to meet the provisions of K.S.A. 84-9-301(1)(c). The time of the purchase was

not an issue as reflected by the parties' own statements of issue in the pretrial order. Nor was it raised by their statement of facts. In addition, the timing of defendants' purchase of the collateral was not raised in the Bank's motion to amend the judgment or for a new trial. Finally, the journal entry of judgment reflects that the trial judge did not make a specific finding of fact on this issue now raised by the Bank. The Bank has raised this argument for the first time on appeal, and consequently this court cannot now consider it. *Anderson v. Overland Park Credit Union*, 231 Kan. 97, 107, 643 P.2d 120 (1982).

As we view the record, the entire trial proceeded on the dispute of whether or not defendants had knowledge of the Bank's security interest. The issue on appeal is a priority question between an unperfected security interest holder (Bank) and a buyer not in the ordinary course of business (defendants) under K.S.A. 84-9-301(1)(c). This section provides that certain classes of persons take priority over an unperfected security interest, including the class known as buyers not in the ordinary course of business. The section provides in pertinent part:

"[I]n the case of *goods,* instruments, documents, and chattel paper, [an unperfected security interest is subordinate to the rights of] a person who is not a secured party and who is a transferee in bulk or *other buyer not in ordinary course of business* . . . to the extent that he gives value and receives delivery of the collateral *without knowledge of the security interest* and before it is perfected." (Emphasis supplied.)

The Bank contends that the defendants had knowledge of the Bank's security interest in the equipment and are therefore precluded from relying on 84-9-301(1)(c) to gain priority over the Bank. The trial court found that defendants were purchasers without knowledge of the Bank's security interest and entitled to priority under 84-9-301(1)(c). The Bank appeals.

The Bank essentially is contesting the trial court's finding of fact, namely the absence of actual knowledge. When a trial is to the court, a trial judge's findings of fact will not be set aside unless they are clearly erroneous, and due regard shall be given to the trial court's opportunity to judge the credibility of the witnesses. *Funke v. Fieldman*, 212 Kan. 524, 529, 512 P.2d 539 (1973). The function of the appellate court, then, is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *NEA-Wichita v. U.S.D. No. 259*,

234 Kan. 512, 515, 674 P.2d 478 (1983); *City of Council Grove v. Ossmann,* 219 Kan. 120, 126, 546 P.2d 1399 (1976).

The trial court found that the Bank failed to meet its burden of proof that defendants had actual knowledge of its security interest in the equipment. A negative finding of fact is more difficult to overcome on appeal. *Lostutter v. Estate of Larkin,* 235 Kan. 154, 162-63, 679 P.2d 181 (1984). A finding that the party upon whom the burden of proof was cast has failed to sustain it is a negative finding. *Brown v. Lang,* 234 Kan. 610, 616-17, 675 P.2d 842 (1984).

K.S.A. 84-9-103(1)(d) provides:

"When collateral is brought into and kept in this state while subject to a security interest perfected under the law of the jurisdiction from which the collateral was removed, the security interest remains perfected, but if action is required by part 3 of this article to perfect the security interest, (i) if the action is not taken before the expiration of the period of perfection in the other jurisdiction or the end of four months after the collateral is brought into this state, whichever period first expires, the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal."

K.S.A. 84-9-301(1)(c) provides:

"Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of

. . . .

"(c) in the case of goods, instruments, documents, and chattel paper, a person who is not a secured party and who is a transferee in bulk or other buyer not in ordinary course of business, or is a buyer of farm products in ordinary course of business, to the extent that he gives value and receives delivery of the collateral *without knowledge* of the security interest and before it is perfected." (Emphasis supplied.)

The Uniform Commercial Code (UCC) does not define knowledge. Nor has Kansas directly interpreted "knowledge" under the UCC. The Bank relies on *Thomas v. Evans,* 200 Kan. 584, 438 P.2d 69 (1968), to support its position that having "reason to know" is within the meaning of actual knowledge. As we read *Thomas,* it is not a case that arose under the UCC. The question there was whether the plaintiff, in an action to recover the unpaid balance due under a contract, had actual knowledge that he was dealing with a corporation rather than with individuals. In *Thomas,* the Kansas Supreme Court was not defining actual knowledge under the UCC, thus *Thomas* is not controlling.

The definitional section of the UCC makes a distinction between "notice" and "knowledge." As set forth in K.S.A. 84-1-201(25):

"A person has 'notice' of a fact when (a) he has actual knowledge of it; or (b) he has received a notice or notification of it; or (c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists. A person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it."

It is apparent from 84-1-201(25) that notice encompasses both "actual knowledge" and "reason to know" and is, therefore, a much broader concept than knowledge. However, if actual knowledge included "reason to know" within its meaning, then the definition of notice would be repetitious. That is to say, subparagraph (c) would be surplusage with the presence of subparagraph (a). It is logical to conclude that by using both (a) and (c), the drafters intended different meanings. Under this rationale, "reason to know" is not within the meaning of actual knowledge.

A recent Kansas case somewhat analogous to our factual situation construes 84-9-103(1)(d) and 84-9-301 and, at least indirectly, suggests that actual knowledge of a security interest does not encompass "reason to know." *Victory Nat'l Bank of Nowata v. Stewart,* 6 Kan. App. 2d 847, 636 P.2d 788 (1981). In *Stewart,* an Oklahoma bank, which had a security interest in a car, sued a Kansas used car dealer, who had purchased the car from its owners, for conversion. The trial court held the car dealer liable for conversion, noting that the dealer was located near the Oklahoma line, should have been familiar with the Oklahoma laws, and could easily have ascertained that the Oklahoma bank had a valid, perfected security interest in the car. The trial court held that although the dealer might not have had actual knowledge of the bank's security interest, he had sufficient knowledge to be put on notice that such a lien might indeed exist and he was under an absolute obligation to make inquiry.

A panel of this court reversed the trial court, holding that under K.S.A. 84-9-301 the Kansas car dealer had priority over the Oklahoma bank because the bank had failed to properly perfect its security interest in Kansas when the car was moved. This court indicated that the Kansas car dealer had no actual knowledge of the Bank's security interest at the time the car was

purchased. Although the meaning of knowledge under 84-9-301(1)(c) was not directly in issue in *Stewart,* the opinion suggests that the trial court erred on that point. Clearly, 84-9-301(1)(c) makes no reference to "notice" of a security interest as the trial court appeared to adopt. Rather, the statute explicitly requires "knowledge." This court disregarded the facts and circumstances that would put a party on notice of a security interest and therefore under an obligation to inquire. By implication, this court required actual knowledge.

Those jurisdictions that have interpreted knowledge under § 9-301(1)(c) of the Uniform Commercial Code do not support the Bank's position here that actual knowledge includes "reason to know." The point is made in *Bloom v. Hilty,* 427 Pa. 463, 234 A.2d 860 (1967), that actual knowledge of a security interest more than a year before the collateral was purchased is not actual knowledge under the code. Even though such information may be sufficient to constitute notice, it is insufficient to establish actual knowledge. The two concepts are distinguished under the UCC. The Pennsylvania Supreme Court reasoned that there was nothing to prevent the secured party's claim from being paid by the debtor during that time interval, thereby terminating the security interest. Under the rationale of *Bloom,* then, the purchaser must have actual knowledge that the security interest still exists at the time the collateral is purchased. Similarly, knowledge by the puchaser that a seller may still owe money on the collateral is not actual knowledge of a security interest. *Kibbe v. Rohde,* 285 Pa. Super. 379, 427 A.2d 1163 (1981); *Whitmire v. Keylon,* 12 U.C.C. Rep. Serv. 1203 (Tenn. App. 1973).

"Actual knowledge" was construed in *Clark Oil & Refining Co. v. Liddicoat,* 65 Wis. 2d 612, 223 N.W.2d 530 (1974). There, a lien creditor was given priority over a holder of an unperfected security interest pursuant to UCC § 9-301. The gasoline supplier (unperfected security interest) argued that the lien creditor, a wholesale gasoline supplier, should have known that a security interest existed in the gasoline it purchased. The Wisconsin court pointed out, however, that the UCC contains no provision requiring an inquiry into whether a security interest exists. The court examined the definition of knowledge under the code and stated:

"By this definition, it is apparent that the framers of the code required proof of

actual knowledge on the part of the lien creditor if he is to be subordinated to the holder of an unfiled security interest. Whether the judgment creditor had reason to know, or might have been alerted to, circumstances that should reasonably have impelled him to check beyond the filed record is irrelevant under the code." 65 Wis. 2d at 622-23.

We conclude that actual knowledge does not encompass "reason to know" within its meaning. The trial court found that defendants lacked actual knowledge of the Bank's security interest. Marilyn Farmer Giangreco testified she did not know of the Bank's security interest in 1981 when she purchased the goods. She did know that G & L owed money to the bank on a loan and that she helped compile an inventory of G & L in 1976 to furnish to the Bank. She was corporate secretary of G & L during 1976 and later from 1979 to 1981, and she lived with the president of G & L as his wife from 1972 through September 1982.

We are unable to conclude that the trial court erred in holding that the defendants did not have actual knowledge of the Bank's security interest.

Affirmed.