781 P.2d 76

**SNAP–ON TOOLS CORPORATION, a Delaware corporation, Plaintiff/Appellant,**

v.

**Randy RICE, Defendant/Appellee.**

**No. 2 CA–CV 88–0375.**

Court of Appeals of Arizona, Division 2, Department B.

May 11, 1989.

Reconsideration Denied June 22, 1989.

Review Denied Oct. 31, 1989.

Brnilovich & Everett by David Brnilovich, Phoenix, for plaintiff/appellant.

Mark E. Battaglia, Benson, for defendant/appellee.

## OPINION

ROLL, Presiding Judge.

Plaintiff/appellant Snap–On Tools Corporation (Snap–On) appeals from the trial court's granting of defendant/appellee Randy Rice's motion to quash provisional remedy. Because Rice acquired property for value and without actual knowledge of Snap–On's unperfected security interest therein, we affirm the trial court.

## FACTS

Snap–On sold tools to Larry Neal, who operated a tire business in Benson, Arizona. The goods included an air compressor and wheel balancer and were sold pur-

suant to purchase money security agreements. Snap–On did not perfect its interest in these tools because it is a Snap–On policy not to record financing statements for contracts involving less than $7,500.

In March 1987, Rice entered into a contract with Neal to purchase the tire business, including some tools which constituted collateral covered by the security agreements. Rice had worked for Neal for approximately one and one-half years prior to the purchase.

In July 1987, Rice applied for credit from Snap–On with the intent of taking over Neal's outstanding tool account. The credit application was denied. Snap–On told Rice that it "would not be able to do business with [Rice] and in his name." Based on Snap–On's refusal to extend Rice credit to take over the tool account, Rice and Neal modified the purchase contract. The price was reduced to $4,000 and Neal kept most of the tools that had been part of the original contract for the sale of the business. Neal did purport to sell the air compressor and wheel balancer to Rice. Neal then moved to Kansas and shortly thereafter filed bankruptcy. After the purchase of the business, Rice made no payments to Snap–On. Thereafter, Snap–On attempted to recover the air compressor and wheel balancer from Rice.

## PROCEDURAL BACKGROUND

Snap–On filed a complaint and application for provisional remedy of replevin without notice. An order was issued directing the sheriff to replevy the collateral. Rice was served with the summons, complaint, and an application for provisional remedy. Rice filed a request for hearing pursuant to A.R.S. § 12–2402. After the hearing, the court quashed the provisional remedy, ordered the return of the collateral, and awarded Rice his costs and attorneys' fees. Snap–On appeals from this order.

## ISSUES

The issues on appeal are whether Snap–On can appeal from the trial court's order and, if so, whether Snap–On's unperfected purchase money security interest is superior to the claim of Rice.

### Jurisdiction

Rice argues that this court does not have jurisdiction to entertain this appeal. The order from which Snap–On appeals complied with the requirements for a judgment, that is, it was written, signed by a judge, and filed with the clerk. *Mark Lighting Fixture Co., Inc. v. General Electric Supply Co.*, 155 Ariz. 27, 31, 745 P.2d 85, 89 (1987). It also contained the requisite Rule 54(b) language. Rule 54(b), Ariz.R.Civ.P., 16 A.R.S. The order is appealable.

### Snap–On's Right to Replevin

Snap–On argues that its unperfected purchase money security interest in the air compressor and wheel balancer is superior to Rice's interest. A.R.S. § 47–9301(A) provides in part:

A. Except as otherwise provided in subsection B of this section, an unperfected security interest is subordinate to the rights of:

\* \* \* \* \* \*

3. In the case of goods ... a person who is not a secured party and who is a ... buyer not in ordinary course of business, to the extent that he gives value and receives delivery of the collateral *without knowledge of the security interest* .... [Emphasis added.]

Snap–On does not deny that goods are involved, that Rice was a buyer not in the ordinary course of business, or that Rice received delivery of the collateral. Snap–On does contend that Rice had knowledge of Snap–On's security interest and that Rice did not give value for the air compressor and wheel balancer. These are questions of fact which the trial court resolved in favor of Rice. Our standard of review is limited to a determination as to whether substantial evidence exists to support the decision of the trial court. *Whittemore v. Amator*, 148 Ariz. 173, 175, 713 P.2d 1231, 1233 (1986).

### a. *Knowledge*

■ For purposes of the Uniform Commercial Code, the definition of knowledge is set forth in A.R.S. § 47–1201(25)(c), which states: "[A] person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it." A.R.S. § 47–9301 does not mandate good faith; it only requires that delivery be taken without actual knowledge of Snap–On's security interest. *Southland Corp. v. Emerald Oil Co.*, 789 F.2d 1441, 1446 (9th Cir.1986) (interpreting UCC § 9–301 under California law). Actual knowledge does not include a reason to know of the security interest. *Broadway National Bank v. G & L Athletic Supplies*, 10 Kan.App.2d 43, 46, 691 P.2d 400, 404 (1984). The purchaser must have actual knowledge that the security interest exists at the time the collateral is purchased.

The code does not require an inquiry into whether a security interest exists. In *Clark Oil and Refining Co. v. Liddicoat*, 65 Wis.2d 612, 622–23, 223 N.W.2d 530, 536 (1974), the court stated:

> By this definition [of knowledge], it is apparent that the framers of the Code required proof of actual knowledge on the part of the lien creditor if he is to be subordinated to the holder of an unfiled security interest. Whether the judgment creditor had reason to know, or might have been alerted to, circumstances that should reasonably have impelled him to check beyond the filed record is irrelevant under the Code.

■ Snap–On argues that Rice had actual knowledge of the security interest of Snap–On in the wheel balancer and air compressor because Rice worked at the store for a year and a half prior to that purchase, Rice made payments to Snap–On on behalf of Neal, Rice made a credit application to assume the obligation of the tool account, Rice was told of Snap–On's interest in the collateral, and Snap–On demanded that Rice turn over the collateral to Snap–On. Snap–On contends that Scott Garvin's testimony proved that Rice was told of Snap–On's interest in the collateral. Garvin, who was Snap–On's credit manager, testified: "I told Mr. Rice we would not be able to do business with him and we needed to pick up the tools."

Rice testified that when he entered into the contract to purchase the business from Mr. Neal in March 1987, he had no knowledge that Snap–On claimed a lien or held an unfiled purchase money security interest in the air compressor and wheel balancer. Rice did admit that although Neal had indicated that the wheel balancer was not "free and clear," Rice believed Neal was to pay off the balancer.

The judge found that "there may be knowledge on the part of the defendant that a contract exists between the person from whom he purchased his business and your client" and that "he may have some knowledge of the existence of an agreement." However, the judge did not find that Rice had actual knowledge of a security interest. We agree that the fact that Rice knew that Neal owed money to Snap–On does not prove that Rice knew of Snap–On's security interest in the air compressor and wheel balancer. Substantial evidence exists to support the trial court's decision that Rice did not acquire the compressor and balancer with actual knowledge of Snap–On's interest.

### b. *Value*

■ Snap–On also maintains that Rice did not give value for the air compressor and wheel balancer as required by A.R.S. § 47–9301(A)(3) because Rice did not pay the full value of the items. Value is defined in A.R.S. § 47–1201(44).

> [A] person gives "value" for rights if he acquires them:
>
> \*  \*  \*  \*  \*  \*
>
> (d) Generally, in return for any consideration sufficient to support a simple contract.

The only testimony presented regarding the value of the two items came from Rice, who stated that the air compressor and wheel balancer had a combined value of $2,500. The $4,000 Rice paid for the business was for good will, some used tires, the compressor, and the balancer. Ample evidence existed to support the trial court's

conclusion that Rice gave value for the two items in question. That Snap–On's lien on the compressor and the balancer exceeded $4,000 does not prove that these two items had a value equal to the lien. Once again, substantial evidence exists to support the trial court's conclusion that Rice gave value for the compressor and balancer.

There was substantial evidence to support the trial court's quashing of the provisional remedy. Rice will be awarded attorneys' fees on appeal upon compliance with Rule 21(c), Ariz.R.Civ.App.P., 17B A.R.S.

We affirm the trial court's granting of Rice's motion to quash provisional remedy and remand this matter for further proceedings.

LACAGNINA, C.J., and FERNANDEZ, J., concur.