William F. WEBB and Gwendolyn H. Webb, individually and as trustees of Webb Trust, an express trust, Plaintiffs and Appellees,

v.

INTERSTATE LAND CORPORATION, Defendant and Appellant.

No. 940307.

Supreme Court of Utah.

July 23, 1996.

---

Robert F. Orton, Mark F. Bell, Salt Lake City, for plaintiffs.

Patricia S. Drawe, Salt Lake City, for defendant.

HOWE, Justice:

Plaintiffs William and Gwendolyn Webb, the owners of certain real property in Utah County, brought this action against defendant Interstate Land Corp., their grantor, seeking reimbursement of an amount the Webbs paid to Young Electric Sign Company (Yesco) after they purchased the property. The district court held that Interstate had breached its covenant against encumbrances contained in the warranty deed executed by Interstate to the Webbs and ordered reimbursement and payment of legal fees to the Webbs. Interstate appeals.

## BACKGROUND

In early 1983, Contract Carpets, which is not a party to this appeal, owned a commercial lot and building at which it operated a retail carpet outlet. In April of that year, Contract Carpets entered into a conditional sales agreement with Yesco for the purchase of a large electronic sign. The sales agreement specifically identified the sign as personal property, not as a fixture, and provided for a total price of about $113,000, with $25,000 to be paid down and sixty monthly payments of about $2,100. The sign was installed adjacent to the building on the property. It stands approximately fifty feet high and is supported by two large pillars embedded in concrete.

In August 1985, Contract Carpets agreed to sell the property to Interstate. It gave Interstate an itemization showing how it would use the proceeds from the sale. Included in this itemization was an allotment of $64,522 for the "Electronic Sign." This was the only reference to the sign in the sale. In December 1985, Contract Carpets conveyed the property to Interstate by a warranty deed which was recorded. Contract Carpets, however, failed to pay the outstanding balance on the sign from the proceeds of the sale and instead used the funds for, in the words of its president, "more pressing priorities."

After Interstate purchased the property, Contract Carpets continued to conduct business from the property as Interstate's tenant and continued to make monthly payments to Yesco as they came due. In June 1986, Contract Carpets refinanced its payment plan with Yesco to reduce its monthly payment. As part of the refinancing, Contract Carpets executed a second conditional sales agreement with Yesco and Yesco filed a UCC–1 financing statement regarding the sign with the Utah Division of Corporations and Commercial Code. This statement referred to the sign as personal property.

In early December 1986, Interstate agreed to sell the property, including the sign, to the Webbs. The Webbs conducted a title search which did not disclose any encumbrance held by Yesco on the property. At the end of the month, the parties entered into an "Exchange Agreement" whereby Interstate sold the Webbs the property, specifically including the sign, in exchange for cash and other land. Interstate conveyed title to the Webbs by a warranty deed which was recorded. No reservations or exceptions regarding the sign were listed on the deed, and the Webbs had no knowledge of Contract Carpets' continued indebtedness for the sign. Interstate also assigned its interest in the lease with Contract Carpets to the Webbs.

In March 1989, Yesco sent Contract Carpets a balance statement regarding the outstanding debt on the sign. Contract Carpets was struggling financially and again refinanced the balance to lower its monthly payments. The two parties entered into a third conditional sales agreement on the sign, and Yesco again filed with the state a UCC–1 financing statement relating to the sign. Shortly thereafter, Contract Carpets defaulted on its contract with Yesco.

Yesco learned that the Webbs had purchased the property and demanded that they pay $26,100. The Webbs, without contacting Interstate, paid Yesco a negotiated sum of $21,000 to extinguish the debt and terminate the financing statements on the sign. One year later, the Webbs made demand on Interstate for the balance owing on the sign as of the date Interstate sold the property to the Webbs. When Interstate did not pay the requested sum, the Webbs brought this action.

Following a two-day bench trial, the district court determined that (1) the sign was a permanent fixture on the property from the time of its installation, (2) the Webbs took title as a "bona-fide third-party purchaser," and (3) prior to Interstate's sale of the property to the Webbs, Interstate "knew or at least should have known that YESCO claimed an interest in The Sign." The court concluded that Yesco's claim constituted an encumbrance against the property and that Interstate had therefore breached its warranty of title against encumbrances to the Webbs. The court awarded the Webbs $21,000, the amount they had paid to Yesco, and $19,212.50, the amount they had incurred in

legal fees to prosecute the action, plus costs. Interstate appeals.

## ANALYSIS

■ Interstate conveyed title to the property in question to the Webbs by warranty deed. A warranty deed in Utah warrants to the grantee, among other things, "that the premises are free from all encumbrances." Utah Code Ann. § 57–1–12. We examine whether the district court correctly concluded that Yesco's interest in the sign encumbered the Webb's title to the property. This is a question of law that we will review for correctness. *State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

■ An encumbrance "includes real estate mortgages and other liens on *real estate* and all other rights in *real estate* that are not ownership interests." Utah Code Ann. § 70A–9–105(1)(g) (emphasis added). We have also defined an encumbrance as "any right a third party holds in *land* which constitutes a burden or limitation upon the rights of the fee title holder." *Bergstrom v. Moore*, 677 P.2d 1123, 1124 (Utah 1984) (emphasis added). We have held that "a covenant against encumbrances is, in effect, a covenant to indemnify where the encumbrance is a charge or lien *against the land* which can be extinguished by payment." *Soderberg v. Holt*, 86 Utah 485, 498, 46 P.2d 428, 433 (1935) (emphasis added); *see also Black's Law Dictionary* 473 (5th ed. 1979) (defining an encumbrance as "[a] claim, lien, charge, or liability *attached to and binding real property.*" (emphasis added)). To qualify as an encumbrance under these definitions, Yesco must have had more than a mere contractual interest in the sign. Rather, it must have had an interest *in the land* to which the sign was affixed. We must examine whether Yesco followed the steps necessary to translate its interest in the sign into an interest in the real property under either chapter nine of the Utah Uniform Commercial Code, dealing with secured transactions, or under traditional principles of real estate law.

### A. Uniform Commercial Code

■ Yesco could have obtained an interest in the real property and taken priority over conflicting interests by complying with the fixture filing requirement set out in Utah Code Ann. § 70A–9–313. Under that section, "goods are 'fixtures' when they become so related to particular real estate that an interest in them arises under real estate law." *Id.* § 70A–9–313(1)(a). The parties do not dispute the trial court's determination that the sign was a permanent fixture on the property from the time of its installation. Nor could they—that determination was clearly correct as to the customized fifty-foot cement-based sign.

Section 70A–9–313 provides for a "fixture filing" consisting of a "financing statement covering goods which are or are to become fixtures." *Id.* § 70A–9–313(1)(b). The document is filed with the county recorder the same way "in which any mortgage on the real estate would be recorded." *Id.* Once filed, this encumbrance may have priority over a subsequent encumbrancer or owner of the real estate. *Id.* § 70A–9–313(4)(a), (b);[1] *see also* A. Squillante, *The Law of Fixtures: Common Law and the Uniform Commercial Code*, 15 Hofstra L.Rev. 535, 550–51 (1987) (stating that under subsection 9–313(4), whoever files first, "be he fixture filer or real estate interest," prevails). If the interest is not protected under section 70A–9–313, "a security interest in fixtures is subordinate to the conflicting interest of an encumbrancer

---

1. This section provides:
 (4) A *perfected* security interest in fixtures has priority over the conflicting interest of an encumbrancer or owner of the real estate where
 (a) the security interest is a purchase money security interest, the interest of the encumbrancer or owner arises before the goods become fixtures, *the security interest is perfected by a fixture filing before the goods became fixtures or within ten days thereafter,* and the debtor has an interest of record in the real estate or is in possession of the real estate; or
 (b) *the security interest is perfected by a fixture filing before the interest of the encumbrancer or owner is of record,* the security interest has priority over any conflicting interest of a predecessor in title of the ... owner, and the debtor has an interest of record in the real estate or is in possession of the real estate....
Utah Code Ann. § 70A–9–313(4)(a), (b) (emphasis added).

or owner of the related real estate who is not the debtor." Utah Code Ann. § 70A–9–313(7).[2]

Section 70A–9–402 sets out the formal requisites of a financing statement. That section provides that if the goods described are to become fixtures, the financing statement must include a legal description of the real estate and the name of the record owner and "be recorded in the real estate records of the county recorder." *Id.* § 70A–9–402(3); *see also id.* § 70A–9–402(7) (comparing fixture filing with mortgage).

Yesco failed to comply with these requirements. Instead, it filed a "Form UCC–1" financing statement with the Utah Division of Corporations and Commercial Code. The form contained no legal description of the real property and did not name the record owner of the property as of the date of its filing. The form named Contract Carpets as the debtor, but Interstate owned the property and the sign when Yesco first filed the statement in July 1986. No filing was made with the recorder of Utah County where the property was located. As a result, when the Webbs purchased the property, their title search did not disclose any encumbrance held by Yesco on the property. Because they did not know about the debt owing on the sign, they were denied the opportunity at the closing of the sale to make provision for its payment. In short, Yesco's filing was totally ineffective to protect its interest in the sign against anyone but Contract Carpets. *See Corning Bank v. Bank of Rector,* 265 Ark. 68, 576 S.W.2d 949, 954 (1979) (security agreement covering grain bins determined to be fixtures ineffective against subsequent mortgagee).

■ The Webbs contend that they are protected by section 70A–9–313(5) which provides in part:

A security interest in fixtures, whether or not perfected, has priority over the conflicting interest of an encumbrancer or owner of the real estate where

(a) the encumbrancer or owner has consented in writing to the security interest or has disclaimed an interest in the goods as fixtures....

The Webbs point out that Yesco and Contract Carpets signed a sales agreement wherein Contract Carpets consented in writing to a security interest in favor of Yesco. While Contract Carpets "consented in writing to the security interest," Interstate and the Webbs did not do so, and we refuse to attribute Contract Carpets' actions to these subsequent owners who clearly considered the property and sign to be unencumbered.

■ The Webbs further contend that Yesco had a protected interest in the sign because it made a good faith filing in an improper place under section 70A–9–401(2).[3] We disagree. For a financing statement to be effective under this section, it must first be filed *somewhere. See Security Nat'l Bank v. Dentsply Professional Plan,* 617 P.2d 1340, 1343 (Okla.1980) ("good-faith" reference requires that attempt be made to file). Here Yesco did not make a filing of any kind before Interstate's December 1985 purchase of the property to which the sign was affixed, although Yesco had nearly three years after Contract Carpets' purchase of the sign to do so.

### B. Traditional Real Estate Law

■ Even though Yesco failed to perfect its interest in the sign under chapter nine of

2. The Webbs contend that under the Uniform Commercial Code's definition of "debtor," section 70A–9–313(7)'s use of the word "debtor" refers not only to Contract Carpets, but also to Interstate and the Webbs. *See* Utah Code Ann. § 70A–9–105(1)(d) (the term "debtor" may mean the owner of the collateral or the obligor). We disagree. Given Interstate and the Webbs' clear lack of consent to Contract Carpet's debt, the Webbs' contention is totally at odds with the facts of this case, the priority provisions of the commercial code, and the recording requirements of Utah's real estate laws.

3. This section provides:

A filing which is made in good faith in an improper place or not in all the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this chapter and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of or notice of the contents of such financing statement.

Utah Code Ann. § 70A–9–401(2).

the uniform commercial code, it could still have relied upon traditional principles of real estate law. Section 70A–9–313(3) provides, "This chapter does not prevent creation of an encumbrance upon fixtures pursuant to real estate law." This is consistent with the real estate title of the code which defines "real property" or "real estate" as "any right, title, estate, or interest in land, including ... all buildings, *fixtures* and improvements on the land." Utah Code Ann. § 57–1–1(3) (emphasis added).

Yesco did not file any encumbrance on the property under traditional real estate law that would have given it priority over the Webbs, who purchased bona fide and for value. Section 57–3–3 provides:

> Each document not recorded as provided in this title is void as against any subsequent purchaser of the same real property, or any portion of it, if:
>
> > (1) the subsequent purchaser purchased the property in good faith and for a valuable consideration; and
> >
> > (2) the subsequent purchaser's document is first duly recorded.

The trial court found that Webb was a bona fide purchaser for value yet reasoned that because Interstate "knew or at least should have known that YESCO claimed an interest in The Sign," Interstate breached its covenant against encumbrances when it conveyed the property by warranty deed to the Webbs. That reasoning is faulty because while Yesco was owed a balance of money on its contract with Contract Carpets, Yesco failed to obtain a security interest in the land.

Interstate was entitled to convey the property to the Webbs free of encumbrances under section 57–3–2(5), which provides:

> The grantee in a recorded document may convey the interest granted to him free and clear of all claims not disclosed in the document in which he appears as grantee or *in any other document recorded in accordance with this title* that sets forth the names of the beneficiaries, specifies the interest claimed, and describes the real property subject to the interest.

(Emphasis added.) Yesco did not record any document in accordance with title 57. Inter-

state did not breach its covenant against encumbrances because there was no encumbrance on the land.

The Webbs contend that under *Boothe v. Wyatt,* 54 Utah 550, 183 P. 323 (1919), Yesco's interest in the sign constituted an encumbrance on their land. In *Boothe,* the defendant made improvements to his land with materials supplied by a lumber company and then sold the property to the plaintiff by warranty deed. Five months later, the lumber company filed a materialman's lien on the property and sued to foreclose. The plaintiff, who had no knowledge of the debt owing on the materials, satisfied the lien and sued the defendant. This court held that the defendant breached his warranty against encumbrances. 54 Utah at 555–56, 183 P. at 324.

*Boothe* does not support the Webbs' position. There the encumbrance was a lien properly filed on the property by a materialman, presumably within applicable statutory or other time limits. In contrast, Yesco did not file any lien against the property at any time. The only document it did file was a financing statement on personal property after Interstate had purchased the property.

The Webbs further contend that if they had not satisfied the debt on the sign, their title to the sign would have been either lost to or burdened by Yesco's interest. This is incorrect. Although Yesco "claimed an interest" in the sign, to protect one's interest in a fixture, one must file proper documentation of that interest. Interstate's knowledge of Contract Carpet's debt on the sign to Yesco is much different than knowing of an interest in the land on which the sign stood. *See Snap–On Tools Corp. v. Rice,* 162 Ariz. 99, 781 P.2d 76, 78 (1989) (fact that subsequent purchaser knew that debtor owed money to creditor does not prove that purchaser knew of creditor's unperfected security interest). Whatever interest Yesco had in the sign, it was not a perfected security interest in the real estate which the Webbs purchased for value and in good faith after a title search disclosed no encumbrances. Under the Webbs' reasoning, a bona fide buyer of a house would be liable for any balance owing to a remote former owner even though that

owner had not recorded a mortgage to secure the indebtedness. Such a result would totally nullify our recording statutes. *See First State Bank v. United Dollar Stores,* 571 P.2d 444, 448 (Okla.1977) (stating that parties must adhere to statutory minimal filing requirements to preserve certainty in commercial transactions).

 Finally, the Webbs argue that "under the doctrine of unjust enrichment, Webb was lawfully required to pay YESCO" because "Interstate and Webb both received the value and benefit of the Sign." We disagree. Yesco failed to comply with the statutory provisions dealing with the perfection and priority of security interests in fixtures. While it is true that both Interstate and the Webbs benefited from the sign, both expressly paid for the sign as a component of the property to which it was affixed. Neither party enjoyed the benefit of an improvement that it had not paid for or that was subject to a valid claim of a third party.

In sum, Yesco did not at any time have a lien or any other form of enforceable encumbrance against the property, despite being in a superior position to protect itself. *See Utah Farm Prod. Credit Ass'n v. Hansen,*

738 P.2d 642, 645 (Utah Ct.App.1987) (lender is in superior position to protect its interests with power to set conditions of security and repayment). As a result, Yesco merely had a contract with Contract Carpets under which Yesco was owed a balance of money. The Webbs purchased free of any liability for the indebtedness. Therefore, there was no breach of the covenant against encumbrances. The Webbs' voluntary and erroneous payment to Yesco to extinguish Contract Carpets' debt on the sign does not impose liability on Interstate.

We reverse the district court's judgment against Interstate for the breach and for the Webbs' attorney fees.

ZIMMERMAN, C.J., and STEWART, Associate C.J., and DURHAM, and RUSSON, JJ., concur.